IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. UMSTEAD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BODI R. UMSTEAD, APPELLANT.

Filed March 16, 2021.    No. A-20-630.

Appeal from the District Court for Merrick County: RACHEL A. DAUGHERTY, Judge. Affirmed.

Jennifer D. Kearney, of Bradley Law Office, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

BISHOP, ARTERBURN, and WELCH, Judges.

BISHOP, Judge.

INTRODUCTION

Bodi R. Umstead pled no contest to one count of terroristic threats, and the Merrick County District Court sentenced him to 24 months' probation. Umstead claims the district court abused its discretion when it denied his motion to withdraw his plea. We affirm.

BACKGROUND

Umstead was arrested on May 2, 2019, after making threats near a school in Merrick County, Nebraska, and he was booked for felony terroristic threats, and misdemeanor obstructing government operations and resisting arrest. The county court for Merrick County entered an order on May 3, finding there was probable cause to believe that Umstead committed a felony; the court set bond at $250,000, "10%." After a bond review hearing on May 10, the court reset Umstead's bond at $25,000, "10%." One of the conditions of his bond was that he obtain "2 mental health

evaluations" within 24 hours of release and follow all recommendations of the evaluations. Umstead filed an appearance bond on May 16, noting the deposit of 10 percent of his bond.

On May 29, 2019, the State filed a complaint in the county court, charging Umstead with count I, terroristic threats, a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-311.01 (Reissue 2016); and count II, resisting arrest, a Class I misdemeanor, pursuant to Neb. Rev. Stat. § 28-904 (Reissue 2016). After a hearing on June 12, count I was bound over to the district court, and count II was dismissed on the motion of the prosecutor without prejudice.

On June 26, 2019, the State filed an information in the district court charging Umstead with count I, terroristic threats, a Class IIIA felony, pursuant to § 28-311.01; and count II, resisting arrest, a Class I misdemeanor, pursuant to § 28-904.

At the arraignment hearing on July 8, 2019, the district court informed Umstead of the three types of pleas, his constitutional rights, the nature of the charges against him, and the possible penalty for each charge. Umstead affirmed his understanding and pled not guilty. A jury trial was scheduled for October 22. In the meantime, status hearings were held on August 19, September 23, October 7, and October 21. At the October 21 hearing, Umstead waived his right to a jury trial, and a bench trial was scheduled for December 9.

When the parties appeared for the bench trial on December 9, 2019, Umstead's counsel informed the district court that an agreement had been reached. Counsel explained that Umstead agreed to plead no contest to count I, terroristic threats, in exchange for the State dismissing count II, resisting arrest. Additionally, the parties jointly requested a psychological evaluation as part of the presentence investigation so that the probation office could make appropriate recommendations as far as the term of probation. The State, "for the record," noted that it had spoken to the witnesses who were in court that morning, and "they [were] in agreement with the plea."

The following colloquy then took place.

THE COURT: . . . Mr. Umstead, you were previously in court and you entered a plea of not guilty to Count I. Do you recall that?

. . . .

[Umstead]: Yes, yes.

THE COURT: Are you asking today to withdraw that previously entered not guilty plea to Count I?

[Umstead]: No, no.

[Umstead's Counsel]: Wait.

(Whereupon, a discussion was had off-the-record between [Umstead] and his counsel.)

[Umstead]: So I -- okay, okay.

THE COURT: I'm just going to explain. You have --

[Umstead]: So I'm not necessarily pleading guilty, I'm just pleading no contest?

[Umstead's Counsel]: Yes, she's asking --

THE COURT: Are you wishing to plead no contest to Count I?

[Umstead]: Okay.

THE COURT: Is that what you're wishing to do Mr. Umstead?

[Umstead]: Yes, Yes.

At that point, the court allowed Umstead to withdraw his previously entered not guilty plea to count I.

The district court then advised Umstead of his plea choices, his constitutional rights, and the consequences of pleading guilty or no contest. The court also explained the nature of the charge against him and the possible penalties. Umstead advised the court he understood his plea choices, his constitutional rights, the charge against him, and the possible penalty for the charge. Umstead advised the court he had no questions, and was ready to enter a plea of no contest. When asked if he had a chance to go over the charge with his counsel, Umstead responded in the affirmative. And when asked if he thought he had any type of defense to the charge that he had not told his counsel about, Umstead responded, "No." Umstead also advised the court that he understood the plea agreement and still wished to plead no contest.

When asked for the factual basis, the State informed the district court that both parties jointly requested that it take judicial notice of the "Affidavit of Probable Cause filed by Central City Police Department Officer Larkins on May 3rd, 2019, in Merrick County Court." The court did take judicial notice of the aforementioned affidavit.

Larkins' written account of the incident was as follows:

On Thursday, 05/02/2019 at approximately 0751 hrs I received a telephone call from Chief Mark Hogue . . . of the Central City Police Department. Chief Hogue received a report of a male subject with a beard, and long black-colored coat in the area of the 'Central City High School,' [at an address in] Central City, Merrick County, NE. He advised the male subject made a threat to "kill people," to a staff member. He reported the subject walked toward the 'Dark Island Trail,' located just east of the High School.

. . . . When I arrived in the area around 0756 . . . I was approached by Justin Anderson . . . in the parking lot of the school. I recognized Justin as an employee of the school. He advised a male subject wearing a black "trench-coat," and beard had threatened to kill people. He pointed toward the 'Dark Island Trail,' and stated he was over there, staring at the school. I contacted the suspect on the trail . . . .

The male subject, later identified as . . . Umstead . . . was standing on a wooden bridge on the trail and facing the school. I observed him wearing a black-colored coat. He also had a beard and was the only pedestrian present in the area. During my contact with him, [Umstead] ignored several loud, clear, verbal commands to keep his hands up, get on the ground, turn around, etc. Chief Hogue arrived to assist. Eventually, [Umstead] complied with commands and I approached to place him into handcuffs. I grasped his left wrist and told him to put his arms behind his back. He pulled his left wrist away from me and toward his face several times. I had to use substantial force to overcome [Umstead's] pulling action on his wrist before he relented and relaxed his arm.

After placing him into handcuffs . . . I walked with the Defendant to my patrol car. The Defendant uttered that he was "just joking," without any questioning.

I transported the Defendant to the Merrick County Jail where he was booked for [several] violations[.]

The district court accepted Umstead's no contest plea to count I, terroristic threats, and found him guilty of the same. The court ordered a presentence investigation to be prepared, as well as a psychological evaluation. A sentencing hearing was set for February 24, 2020.

On January 2, 2020, Umstead filed a "Motion to Withdraw Guilty [sic] Plea," wherein he alleged that (1) at the time of his plea he did not understand the possible penalties for the charged offense, (2) he did not understand the terms of the plea agreement and did not have enough time to contemplate the plea agreement and the consequences of his plea, and (3) such ignorance is a fair and just reason for withdrawal of the no contest plea.

The hearing on Umstead's motion to withdraw his plea was held on January 27, 2020. The parties stipulated that one of the witnesses was emotionally upset at the time of her initial report to law enforcement as well as during her deposition; this went to the State's argument of prejudice against having to bring the witness back in to testify. However, Umstead's counsel argued that the witness was upset because "she felt the whole situation had kind of been blown out of proportion and she felt uncomfortable being the center of attention." No other evidence was adduced.

As to Umstead's reasons for motioning to withdraw, counsel asserted that Umstead had about 20 to 30 minutes to contemplate the plea agreement on the day it was entered, and that there had been no discussion about the plea agreement prior to that. Umstead's counsel argued that at the time of the plea, she believed that Umstead understood it, but during later conversations "it became clear that Mr. Umstead didn't understand certain aspects of what the plea agreement was." Counsel requested that Umstead be allowed to withdraw his plea and that a bench trial be held; counsel noted that all witnesses lived in the area. The State opposed the motion, arguing that at the plea hearing, Umstead was represented by counsel, he acknowledged that he understood the plea alternatives and his constitutional rights, and that he knowingly, voluntarily, and intelligently waived those rights and entered a plea. The State also asserted that the "plea was on the table since September 5th [2019], two months in advance of the bench trial"; the only difference was that the State had agreed to stand silent at sentencing. But on the morning of the hearing, an agreement was made where the State would jointly recommend a term of probation as long as Umstead got a psychiatric evaluation. The State argued that it would be prejudiced if Umstead was allowed to withdraw his plea, given that a witness who had previously been emotionally upset appeared and was prepared to testify on December 9. The State further argued that it would jeopardize that witness' mental well-being to make her come back to court.

In its order filed on February 20, 2020, the district court stated it had thoroughly reviewed with Umstead his rights, the charge, and penalty before accepting his plea and finding that his plea was freely, voluntarily, knowingly, and intelligently made; and during the plea, Umstead was given several opportunities to state that he was not accepting the agreement. The court stated that no evidence to the contrary was before it. Additionally, "[a]rguably, the State would be prejudiced by the withdrawal of the plea as the witnesses, at least one of whom was upset during deposition and who appeared on the day of trial, had been told they would not have to testify." The court found that Umstead had not met his burden of showing a fair and just reason to withdraw his plea, and denied his motion to withdraw his plea.

The sentencing hearing was ultimately held on August 3, 2020. The district court sentenced Umstead to 24 months' probation.

Umstead now appeals.

## ASSIGNMENT OF ERROR

Umstead assigns that the district court abused its discretion when it denied his motion to withdraw his plea.

## STANDARD OF REVIEW

A trial court has discretion to allow defendants to withdraw their guilty or no contest pleas before sentencing. *State v. Carr*, 294 Neb. 185, 881 N.W.2d 192 (2016). An appellate court will not disturb the trial court's ruling on a presentencing motion to withdraw a guilty or no contest plea absent an abuse of discretion. *Id*. A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Baxter*, 295 Neb. 496, 888 N.W.2d 726 (2017).

## ANALYSIS

The right to withdraw a plea previously entered is not absolute. *State v. Carr, supra*. When a defendant moves to withdraw his or her plea before sentencing, a court, in its discretion, may sustain the motion for any fair and just reason, provided that such withdrawal would not substantially prejudice the prosecution. *Id*. See, also, *State v. Carlson*, 260 Neb. 815, 619 N.W.2d 832 (2000) (reaffirming standard is that court *may* allow defendant to withdraw plea, not that court *should* allow defendant to withdraw plea). The defendant has the burden to show the grounds for withdrawal by clear and convincing evidence. *State v. Carr, supra*. Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *State v. Payne-McCoy*, 284 Neb. 302, 818 N.W.2d 608 (2012).

As stated previously, in his motion to withdraw plea, Umstead alleged that (1) at the time of his plea he did not understand the possible penalties for the charged offense, (2) he did not understand the terms of the plea agreement and did not have enough time to contemplate the plea agreement and the consequences of his plea, and (3) such ignorance is a fair and just reason for withdrawal of the no contest plea. However, his allegations were refuted by the record.

At both the arraignment on July 8, 2019, and at the time of the no contest plea on December 9, Umstead was advised of his plea choices, his constitutional rights, and the charge against him and the possible penalty. Umstead advised the court he understood his plea choices, his constitutional rights, the charge against him, and the possible penalties, and that he had no questions and was ready to enter a plea of no contest. Umstead advised the court that he had gone over the charge with his attorney and that he did not have any type of defense to the charge that he had not told his attorney about. Umstead also advised the court that he understood the plea agreement, and after hearing the factual basis, still wished to plead no contest.

To support a finding that a defendant freely, intelligently, voluntarily, and understandingly entered a guilty plea, a court must inform a defendant about (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. *State v. Carr, supra*. The record must also show a factual basis for the plea and that the defendant knew the range of penalties for the crime charged. *Id*. Umstead was advised as to all of the above, and a factual basis for the plea was given on December 9, 2019, when Umstead entered his no contest plea.

Umstead argues that he only had 30 minutes to contemplate the plea agreement prior to entering the same and that such was not a sufficient period of time for him to consider the consequences of his plea. However, at the hearing on Umstead's motion to withdraw, the State informed the district court that the "plea was on the table since September 5th [2019], two months in advance of the bench trial"; the only difference was that on the morning of the hearing, an agreement was made so that instead of standing silent at sentencing, the State would jointly recommend a term of probation as long as Umstead got a psychiatric evaluation.

Now, on appeal, Umstead asserts for the first time his "mental health issues further exacerbated both his confusion of the terms of the plea and his understanding of the consequences of his plea, not the least of which were the consequences of his plea on his career aspirations." Brief for appellant at 6. He claims the court "fail[ed] to consider [his] mental health issues and lack of understanding of the plea." *Id*. at 5. At no time before the district court did Umstead allege his mental health issues as a reason for allowing the withdrawal of his plea. Appellate courts do not ordinarily consider arguments and theories raised for the first time on appeal. *State v. Canaday*, 307 Neb. 407, 949 N.W.2d 348 (2020).

Regardless, and for the sake of completeness, we briefly address Umstead's claim that his mental health was an issue throughout the course of this action, "[a]s early as the first bond hearing" when his bond "was predicated on the position that [he] was required to obtain a mental health evaluation within 24 hours of release and was required to follow all recommendations of that evaluation," and the district court itself ordered a mental health evaluation. Brief for appellant at 7. According to Umstead, the district court "was aware of and conscientious of" his mental health issues and "should have taken a position of caution in determining [his] plea was voluntarily and knowingly entered." *Id*. at 6. As noted by the State, "the ordering of a mental health evaluation is quite different from conclusions and diagnoses on the record that establish conditions to be mindful of by the district court." Brief for appellee at 12. There is no evidence in our record to establish that any mental health issues Umstead may have had affected his ability to enter a plea.

Given the circumstances of this case and the legal principles cited above, Umstead failed to prove by clear and convincing evidence that he had a fair and just reason to withdraw his plea. Accordingly, the district court's denial of Umstead's motion to withdraw plea was not an abuse of discretion.

CONCLUSION

For the reasons set forth above, we affirm the decision of the district court.

AFFIRMED.